IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MAXWELL TYLER HARDOBY, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16cv00103 |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHWEST VIRGINIA | ) | By: Elizabeth K. Dillon |
| REGIONAL JAIL AUTHORITY, | ) | United States District Judge |
|     Defendant. | ) | |

## MEMORANDUM OPINION

Maxwell Tyler Hardoby, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983 against the Southwest Virginia Regional Jail Authority ("Jail Authority").[1] Defendant filed a motion to dismiss, and Hardoby responded, making this matter ripe for disposition.[2] Having considered the record, the court will grant in part and deny in part defendant's motion to dismiss.

---

[1] Hardoby also filed a motion for preliminary injunctive relief (Dkt. No. 13) seeking access to the Federal Rules of Civil Procedure and this court's local rules. When he requested access to those rules, he was incarcerated in the Southwest Virginia Regional Jail facility. After filing this action and making his request for the rules, however, he was transferred to Bland Correctional Center, a Virginia Department of Corrections facility. Since his transfer, there is no indication that he still requests this access. When a claim no longer presents a viable legal issue to resolve, the claim becomes moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which render the court unable to grant a party the relief requested, the claim(s) must be dismissed as moot. *Blanciak v. Allegheny Ludlum Co.*, 77 F.3d 690, 698-99 (3d Cir. 1996). The transfer or release of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the former place of confinement. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (prisoner's transfer rendered moot his claims for injunctive and declaratory relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that transfer of a prisoner rendered moot his claim for injunctive relief); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (holding that transfer made moot claim for injunctive relief); *Ross v. Reed*, 719 F.2d 689, 693 (4th Cir. 1983); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). Thus, the court finds that Hardoby's request for preliminary injunctive relief is moot and will deny the motion.

[2] To the extent Hardoby may be attempting to raise any new claims in his responses to the motion to dismiss, the court notes that any proposed amendments must be made in accordance with Rule 15 of the Federal Rules of Civil Procedure. Because his are not, any new claims raised in Hardoby's response are not considered by the court at this time. Hardoby may raise any such claims in a separate action after exhausting available administrative remedies.

I.  BACKGROUND

Hardoby alleges that on February 15, 2016, upon reviewing his inmate account report, he noticed that on multiple occasions his account had been debited twice for the $1.00 daily housing fee.  Because Hardoby could only access the past four to six weeks of his account statements, he requested a hard copy of an itemized summary of his inmate account.  Two days later, a jail employee notified Hardoby that the double charges were a "known issue" and would take up to a month to resolve.  For the time period between August 2015 and February 2016, Hardoby was overcharged a total of $5.00.  He was also charged $3.50 for the 35-page printout of his account that he requested (10¢ per page).  Hardoby alleges that he was charged a copy fee as "punishment" for "looking into" the issue with his inmate account.  On February 16, 2016, Hardoby requested a refund of the copy fee ($3.50) and overcharged housing fees ($5.00).  His request was denied.  After Hardoby filed grievances on the issue, he states that he was charged an additional 5¢ per page for the copies of his inmate account.  Hardoby alleges that he was charged the additional copy fee in retaliation for his filing of grievances.

Hardoby also contends that he is not allowed "reasonable access to [the] law library resources."  In support of his claim, Hardoby states that he is only given 30 minutes of access to the library at a time.  He argues that this is "not enough time to read even one case."  He also states that he requested copies of three cases and one section of the Virginia Code and did not receive the copies until a week later and that, when he does get printouts of cases, they are summaries of the cases instead of the full text.  Hardoby further contends that the jail charges inmates to get copies of cases "despite the issue with limited time to read the materials on the electronic resource."

2

Case 7:16-cv-00103-EKD-RSB   Document 31   Filed 03/21/17   Page 2 of 12   Pageid#: 192

Following the granting of plaintiff's motion to amend (Dkt. Nos. 7-8), Hardoby's final claim is that the jail will not allow him to have a newspaper subscription of his choice because the jail states that it "presents a security risk."[3] Instead, he only has access to the two newspapers, "one national and one local," which the jail provides to inmates. In response to the motion to dismiss, Hardoby clarifies that the jail provides two copies of USA Today to the pod. Hardoby alleges that the newspapers must be returned within 24 hours, which he argues is not enough time for up to 55 inmates to read them.[4]

---

[3] In response to a grievance that Hardoby attaches to his first supplemental complaint (Dkt. No. 7), jail staff stated that allowing a newspaper subscription, beyond those provided by the jail, presents "a security issue and fire hazard when allowed to build up." In response to that, Hardoby proposes that he would return each newspaper before receiving a new one, which would result in him only having one newspaper at a time. Jail staff replied to his proposal by stating that the jail "does not allow this."

[4] Hardoby filed a second motion to amend his complaint (Dkt. No. 17) to add claims that the jail is: 1) overcharging for telephone calls (he believes there are lower rates at other facilities) and commissary items (he pays 85¢ for ramen that costs 10¢ in a grocery store), and 2) not properly using the profits from the commissary sales. However, because his allegations fail to state viable federal claims, the court will deny the motion to amend as futile. While leave to amend shall be freely given when justice so requires, Fed. R. Civ. P. 15(a), it should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). In this case, the proposed amendments would be futile because they do not state cognizable federal claims.
    Hardoby's claims concerning the cost of telephone calls and commissary items do not implicate a violation of a federal right. "[P]risoners are [not] entitled to a specific rate for their telephone calls." *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 555-56 (E.D. Va. 2006) (quoting *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000)). And no federal constitutional provision requires jails to provide inmates with a commissary to purchase food items at any price. *See Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop . . . ."). Once a correctional facility voluntarily decides to set up a commissary for inmates, the Constitution does not require the facility to offer its commissary items for sale at or near cost. *See French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980); *Trujillo v. Young*, No. 7:02-cv-01083, 2003 U.S. Dist. LEXIS 27756, at *9, 2003 WL 23312781, at *3 (W.D. Va. June 5, 2003) (holding that inmate has no protected right to purchase commissary items at low prices); *Hopkins v. Keefe Commissary Network Sales*, No. 07-745, 2007 U.S. Dist. LEXIS 50961, at *2, 2007 WL 2080480, at *5 (W.D. Pa. July 12, 2007) (holding no right to restrain commissary from charging even exorbitant prices); *Pepper v. Carroll*, 423 F. Supp.2d 442, 449 (D. Del. 2006) (holding that inmate has no constitutionally protected right to purchase commissary items as cheaply as possible); *Rodriguez v. Swanson Servs. Corp.*, No. 01-117-P-C, 2001 U.S. Dist. LEXIS 6328, at *4, 2001 WL 506871, at * 1 (D. Me. May 11, 2001) (holding commissary pricing does not implicate constitutional concerns). Accordingly, neither of Hardoby's claims concerning overcharging states a viable § 1983 claim, and the court will deny his motion to amend to add these claims.
    Hardoby also alleges that the jail is not properly using the commissary profits. Specifically he is concerned with the "lack of benefit imparted to inmates" because "there is no accounting of how those resources are being used" that is available to inmates. Hardoby alleges that the foregoing "suggest[s that] there is an extremely high probability of these funds not being utilized within the scope of the law's requirements." The court finds that Hardoby's allegations are far too speculative and conclusory to state a constitutional claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a plaintiff must assert factual allegations that raise a right to relief that is "plausible on its face," not one that is speculative or merely "conceivable"); *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391

3

II.  DISCUSSION

**A.  Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level," *id*., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc*., 415 F.3d 342, 346 (4th Cir. 2005).  Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*.  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant

---

(4th Cir. 2011) ("While a court must accept the material facts alleged in the complaint as true, statements of bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim."). Accordingly, the court will also deny his second motion to amend to add this claim.

4

is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (*quoting Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (*quoting Sado v. Leland Memorial Hospital*, 933 F. Supp. 490, 493 (D. Md. 1996)).

**B. Account Overcharges, Retaliation, and Photocopy Policy**

Hardoby names only the Jail Authority as a defendant to this action. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the . . . action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978). The entity is not liable under § 1983 merely because of the actions of its employee because the doctrine of *respondeat superior* does not apply. *Id.* at 691. Thus, a governmental entity, such as a regional jail authority, is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation. *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981). That is, the entity's official policy

5

or custom must have played a part in the alleged violation of federal law. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817-18 (1985).

In this case, Hardoby does not sufficiently allege that any official policy or custom of the Jail Authority was responsible for the now-refunded account overcharges of $5.00 or the alleged retaliation. In response to the motion to dismiss, Hardoby alleges that he "has experienced and witnessed many instances of retaliatory behavior by the defendant jail's staff operators." However, his allegation is insufficient to establish that the alleged retaliation in this case is based on a policy or custom of the Jail Authority. The only alleged incidents of retaliation raised in this case are that Hardoby was charged the 10¢ per page fee "to discourage [him] and/or others from exercising [their] only means of monitoring inmate accounts with a comprehensive scope," and that he was charged the additional 5¢ per page fee in retaliation for using the grievance procedure and "expressing his displeasure." Hardoby "concedes [that] the copy fees assessed to his inmate account may be legal," but argues that the jail's "actual policy (10¢ per page) differed from the printed policy (15¢ per page), and the defendant jail only began acting on [its] printed policy as a subsequent remedial action to defend itself against Mr. Hardoby's claim." Although the "printed policy" is that the jail charges 15¢ per page for copies, Hardoby states that sometimes inmates are not charged for copies, sometimes they are charged 10¢ for copies, and sometimes they are charged 15¢ for copies. He does not allege that there is a consistent pattern to the varying copy fees. The court concludes that Hardoby's allegations are insufficient to establish that any alleged retaliation is based on a policy or custom of the Jail Authority and, thus, will grant the motion to dismiss as to overcharging and retaliation.

6

To the extent Hardoby bases his claim that he was charged for photocopies of his inmate account report statements, which he requested in order to verify that his account had been properly debited, pursuant to a Jail Authority policy that requires a charge for copies, his claim fails. Inmates have no specific constitutional right to free or unlimited photocopies. *See, e.g., Lyons v. Clark*, 694 F. Supp. 184, 188 (E.D. Va. 1988); *Cottrell v. Jabe*, No. 7:10cv505, 2012 U.S. Dist. LEXIS 28445, at *37-38, 2012 WL 830469, at *13 (W.D. Va. Feb. 17, 2012); *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir.1991); *Young v. Larkin*, 871 F. Supp. 772, 782 n. 19 (M.D. Penn.1994); *Dugar v. Coughlin*, 613 F. Supp. 849, 853 (S.D.N.Y.1985). Rather, to make out a claim under § 1983 based on denial of copying privileges, an inmate must show that the denial prevented him from exercising his constitutional right of access to courts. *Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir. 1983). "The reasonableness of a prison's photocopy policy becomes relevant only after the prisoner has shown that the policy is impeding that access, for if it is unreasonable, but not impeding, he has not made out a prima facie case of violation of his constitutional rights." *Id.* Hardoby does not allege that failing to give him free copies of his inmate account report statements impeded his access to courts. Accordingly, the court finds that Hardoby's allegations concerning the photocopy charges fail to state a claim, and the court will grant defendant's motion to dismiss as to this claim.

**C. Access to the Law Library**

Hardoby contends that, while incarcerated at the Southwest Virginia Regional Jail facility, he was provided inadequate access to the law library at the jail which frustrated his access to courts. Inmates have a constitutional right to reasonable access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *Bounds v. Smith*, 430 U.S. 817, 838 (1977); *Ex*

*parte Hull*, 312 U.S. 546 (1941).  In order to bring a denial of access to the courts claim, a plaintiff must (1) identify a nonfrivolous, arguable underlying claim; (2) show official acts frustrating litigation; and (3) propose a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."  *Id.*  Thus, in order to state a constitutional claim of denial of access to the courts, a plaintiff must allege specific injury resulting from the alleged denial.  *See Lewis*, 518 U.S. at 349 (holding that an inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure in effect at the place of incarceration in that his non-frivolous legal claim had been frustrated or was being impeded); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (plaintiff failed to identify any actual injury resulting from official conduct); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir.1993) (Prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access.").  The predicate claim must be described well enough to apply the "nonfrivolous" test and to show that the "arguable" nature of the underlying claim is more than hope.  *Christopher*, 536 U.S. at 416.

      The right to access to the courts is intended to permit inmates "to litigate post-conviction legal issues, such as habeas corpus and civil rights actions."  *Harvey v. Horan*, 278 F.3d 370, 386 (4th Cir. 2002).  However, "a state has no affirmative duty to 'enable the prisoner to discover grievances, and to litigate effectively once in court." *Id.* (citing *Lewis*, 518 U.S. at 354).  "Thus, although a state must provide prisoners with meaningful access to the legal system, it is not obligated to maximize the prisoner's chances of prevailing in his postconviction action."  *Id.*  While prison officials may not "actively interfer[e] with inmates' attempts to prepare legal

8

documents, or file them," *Lewis*, 518 U.S. at 350, "[p]rison policies that cause mere inconvenience or delay of an inmate's litigation efforts do not violate his right to access the courts," *Makdessi v. Hinkle*, No. 7:14CV00034, 2014 U.S. Dist. LEXIS 63231, at *10, 2014 WL 1782820, at *4 (W.D. Va. May 5, 2014). "The fact that an inmate may not be able to litigate in exactly the manner he desires is not sufficient to demonstrate the actual injury element of an access to courts claim." *Godfrey v. Washington County, Va., Sheriff*, No. 7:06cv187, 2007 U.S. Dist. LEXIS 60519, at *39, 2007 WL 2405728, at *13 (W.D. Va. Aug. 17, 2007).

In support of his access to courts claim, Hardoby alleges that he is only given access to the library for 30 minutes at a time, requested documents can take up to a week to obtain, and he is charged by the page to get copies of cases. In response to defendant's motion to dismiss, Hardoby claims that his "poor access to legal resources" is "primarily responsible" for: 1) placing him "at a disadvantage" in responding to defendant's motion to dismiss, and 2) his "lack of knowledge" as to how to request a jury trial, request appointment of counsel, request removal of defendant's counsel for a conflict of interest,[5] or file a motion for summary judgment, "the motions he previously filed, or any other pertinent motions." Hardoby states that he also wants to research the possibility of filing for divorce and "other issues of a constitutional nature," but "time constraints and insufficient books/resources prevent [his] ability" to do the research and file a petition. Hardoby states that his "ability to proceed is being hindered as a result of the poor and slow access/process of legal research" available at the jail. He argues that the "claim being

---

[5] Defendant's counsel is a member of Street Law Firm, LLP. Hardoby alleges that "Street Law Firm has a partner and had another attorney on the faculty of the Appalachian School of Law," where Hardoby was a former student. The partner was Hardoby's professor at the law school before Hardoby was incarcerated. Hardoby claims that as a professor at the law school, the partner would have "personal knowledge of [Hardoby's] entire life history through his application to the law school." Hardoby also alleges that another attorney at the Street Law Firm worked for the Commonwealth's Attorney's Office when Hardoby was sentenced "for his current term of incarceration." Hardoby does not explain how these relationships work to create a "conflict of interest" in the instant case.

9

hindered most is the claim alleging non-compliance with state law in the use of commissary profit for inmate benefit." Hardoby alleges that he has had difficulty doing research related to "commissary sales and use of profits from those sales for inmate benefit."[6]

Hardoby fails to identify a nonfrivolous, arguable underlying claim to which he was denied access to the court. While Hardoby's litigation efforts may have been inconvenienced or delayed by his accessibility to the jail's law library, his allegations are insufficient to state a constitutional claim. Accordingly, the court will grant defendant's motion to dismiss as to this claim.

### D. Newspaper Subscription Policy

Hardoby alleges that he was denied a personal subscription to a newspaper. Inmates clearly retain their First Amendment right of free speech in prison, which includes the right to access publications. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, the Constitution allows greater restriction of First Amendment rights in a prison setting. *See Beard v. Banks*, 548 U.S. 521, 528 (2006); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration."). In determining whether the jail policy denying access to a publication violates the First Amendment, the court must apply a reasonableness test. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). In order to be valid, the prison regulation must be "reasonably related to legitimate penological interests" and must not be an exaggerated response" to meet the objective. *Id.* The court looks to four factors: whether the regulation is rationally connected to a legitimate and neutral government objective; whether the inmate has alternative means of

---

[6] The court notes that, as previously discussed, Hardoby's allegations related to the commissary funds fail to state a cognizable federal claim.

exercising the right; the impact on the guards and other inmates if accommodation is made for the asserted right; and whether there are obvious alternatives to the regulation that show the regulation is an exaggerated response to prison concerns. *Turner*, 482 U.S. at 89-91. When assessing the reasonableness of a policy or regulation, courts accord "substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132; *Pell v. Procunier*, 417 U.S. 817, 826-27 (1974). Given the procedural posture of this case, the court cannot assess the factors without additional information about the Jail Authority's policy and the reasons for the policy. Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Hardoby, the court finds that Hardoby's allegations are sufficient to state a plausible First Amendment claim against the Jail Authority. Therefore, the court will deny defendant's motion to dismiss as to this claim.

Finally, and although not raised by the Jail Authority, the court notes that Hardoby's complaint does not state what remedy he seeks if he were to prevail in this case. Because Hardoby's case may not go forward if he seeks no relief from this court, the court grants Hardoby twenty (20) days to amend his complaint to state a request for relief. Hardoby is advised that if he fails to amend his complaint to state a request for relief, his complaint may be summarily dismissed.

### III. CONCLUSION

For the reasons stated herein, the court will deny Hardoby's second motion to amend (Dkt. No. 17); will deny Hardoby's motion for preliminary injunctive relief as moot (Dkt. No. 13); will grant in part and deny in part defendant's motion to dismiss (Dkt. No. 18); will direct

Hardoby to amend his complaint to include a request for relief within twenty (20) days or risk dismissal of his case; and will direct defendant, pursuant to Standing Order 2013-6, to file a motion for summary judgment, supported by affidavit(s), within thirty (30) days of the docketing of Hardoby's amended complaint referenced above.

An appropriate order will be entered.

Entered: March 21, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge