# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **MAXWELL TYLER HARDOBY,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:16cv00103 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **SOUTHWEST VIRGINIA** | ) | By: Pamela Meade Sargent |
| **REGIONAL JAIL AUTHORITY**, | ) | United States Magistrate Judge |
| Defendant | ) | |

The pro se plaintiff, Maxwell Tyler Hardoby, ("Hardoby"), a Virginia Department of Corrections, ("VDOC"), inmate, brings this civil rights action pursuant to 42 U.S.C. § 1983, against the Southwest Virginia Regional Jail Authority, ("Jail Authority"), where he was held before being transferred to VDOC custody. Hardoby's only claim remaining before the court is a claim that the Jail Authority violated his rights under the First Amendment by refusing to allow him to receive an individual subscription to a national daily newspaper through the mail.

This matter has been transferred to the undersigned based on the parties' consent pursuant to 28 U.S.C. § 636(c)(2). The matter is before the court on the Jail Authority's motion for summary judgment, (Docket Item No. 36), and Hardoby's response. (Docket Item No. 44.) For the reasons set out below, the court will grant summary judgment in the Jail Authority's favor.

*I. Facts*

There is no dispute in the material facts. Hardoby was incarcerated by the Jail Authority from the date of his arrest on March 20, 2015, until his transfer to VDOC custody on or about June 20, 2016, to complete service of his sentence. While being held in the Jail Authority's Abingdon facility, Hardoby, on March 9, 2016, requested permission to receive a mail subscription to a national daily newspaper. That request was denied. In response, Hardoby offered to surrender the previous day's newspaper when he received the next one. Hardoby, by affidavit, stated that on many days, he did not get to read a newspaper when he was held at the Abingdon facility because of the number of inmates wanting to read the newspapers provided.

Jail Authority Superintendent Stephen Clear, by affidavit, stated that the Jail Authority provides inmates at each of its facilities with one local newspaper and one national newspaper. Clear stated that the Jail Authority implemented a policy effective March 1, 2015, to no longer allow inmates to receive personal reading material from outside publishers. This policy was amended on June 1, 2016, to allow books to be ordered from a publishing company on a case-by-case basis upon the approval of the Jail Administrator or designee. Clear stated that the Jail Authority would accept approved donations of books, periodicals and newspapers to its libraries. Clear stated that the Jail Authority "does not have the available resources to deliver newspaper subscriptions to individual inmates on a daily basis…." He also stated that "the accumulation of daily newspaper subscriptions by inmates would create a fire hazard." According to Clear: "The Authority denied Hardoby's request for individual newspaper subscriptions because of

legitimate safety and security issues as well as limited resources to accommodate the requested newspaper subscriptions."

## *II. Analysis*

Hardoby claims that the Jail Authority violated his First Amendment rights by refusing to allow him to receive an individual subscription to a national daily newspaper. The Jail Authority argues that the no individual newspaper subscription policy is valid because it is reasonably related to a legitimate penological interest. The Jail Authority also argues that Hardoby's claim is moot because he has sought only injunctive relief, and he is no longer incarcerated at the Jail Authority's Abingdon facility.[1]

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the record reveals that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson,* 477 U.S. at 255;

---

[1] Hardoby has filed a request to be paid his lost wages and travel expenses if this case continues after his release from state custody next month, but he has not sought compensatory or even nominal monetary damages related to his claim.

*Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

Based on the court's review of the record before it, no genuine dispute of material fact exists with regard to Hardoby's First Amendment claim. The Jail Authority admits that it denied Hardoby's request to receive an individual subscription to a national daily newspaper pursuant to the policy put in effect on March 1, 2015. As stated above, Clear, the Jail Authority Superintendent, has given two reasons for the implementation of this policy. Clear stated that the policy promotes good housekeeping standards, which, in turn, promote fire safety. Clear also stated that the Jail Authority denied Hardoby's request because it does not have the resources to deliver newspapers to inmates on a daily basis. Hardoby has offered evidence that the policy is not necessary to promote fire safety, in that he has offered to keep only one copy of the newspaper in his cell at a time.

When a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *See*

*Turner v. Safley*, 482 U.S. 78, 89 (1987). Several factors are relevant in determining the reasonableness of the regulation:

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. … A second factor relevant … is whether there are alternative means of exercising the right that remain open to prison inmates. … A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. … Finally the absence of ready alternatives is evidence of the reasonableness of a prison regulation. … By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.

*Turner*, 482 U.S. at 89-90 (internal citations omitted).

In this case, Hardoby's challenge might succeed, if the only reason offered by the Jail Authority for the implementation of the no individual newspaper subscription policy was to promote fire safety. Hardoby has offered an alternative that would allow him to receive a daily newspaper, but not allow those newspapers to accumulate in his cell, creating a fire danger. He, or any inmate who received an individual newspaper subscription, could be permitted to keep only one newspaper at a time in his cell. The existence of such an obvious, easy alternative is evidence that the no individual newspaper subscription policy is an exaggerated response to the Jail Authority's fire safety concerns.

Nonetheless, the Jail Authority has cited another reason for the policy – it simply does not have the staff and personnel to deliver newspapers to inmates on a daily basis. As the Supreme Court recognized in *Turner*: "In the necessarily closed

environment of the correctional institution, few changes will have no ramifications … on the use of the prison's limited resources for preserving institutional order." 482 U.S. at 90. The Supreme Court also has recognized that maintaining institutional security and preserving internal order and discipline are "essential goals" of correctional facilities. *See Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). Thus, the Jail Authority has put forward a legitimate interest. The undisputed evidence also shows that there is a rational connection between the policy at issue and the preservation of security and order, in that the Jail Authority's staff will not be required to divert their time and attention to the distribution of individual newspapers each day to inmates. *See Bourne v. SW. Va. Reg. Jail*, 2014 U.S. Dist. LEXIS 88096, at *8 (W.D. Va. June 26, 2014) (jail facility's concern over use of staff time to distribute individual newspaper subscriptions a legitimate penological reason for no individual newspaper subscription policy). Also, the undisputed evidence shows that there is an alternative means of allowing inmates access to more than one newspaper – the Jail Authority library can accept a donation subscription to periodicals, including newspapers. Furthermore, the policy operates in a content-neutral fashion, in that it prohibits all individual daily newspaper subscriptions. *See Bell*, 441 U.S. at 551 (ban on hardback books operates in a neutral fashion, without regard to content).

Based on the above, I find that there is no genuine dispute of material fact and that the Jail Authority is entitled to judgment as a matter of law because the policy at issue does not violate Hardoby's First Amendment rights, in that it is reasonably related to legitimate penological interests.

I also find that there is no genuine dispute of material fact and that the Jail Authority is entitled to judgment as a matter of law because Hardoby's claim for

injunctive relief became moot upon his transfer into VDOC custody. The Fourth Circuit has held that a prisoner transfer moots a request for injunctive relief. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986); *Stone v. Duffield Jail-Medical*, 2017 WL 1379399, at *1 (W.D. Va. Apr. 14, 2017).

The court will enter an appropriate order.

**ENTERED:** June 21, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE